# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint Petition of | No. 51942-9-II |
| DARREL LORNE HARRIS, | UNPUBLISHED OPINION |
| Petitioner. | |

MAXA, C.J. – In this personal restraint petition (PRP), Darrel Harris seeks relief from personal restraint imposed following his convictions for indecent liberties against his adult niece KM and first degree child rape and first degree child molestation against KM's daughter JJ. KM and JJ were living with Harris when these acts occurred.

Harris argues that he received ineffective assistance of counsel because defense counsel failed to introduce testimony from certain witnesses about his reputation for truthfulness, about his reputation for sexual morality and decency around children, and about his work schedule that showed that he usually was not at home during the day when JJ alleged that she was abused. Harris also contends that defense counsel was ineffective for failing to introduce testimony and conduct cross-examination of KM regarding KM's drug use and dishonest behavior.

We reject these arguments because Harris cannot show that he received ineffective assistance of counsel. Accordingly, we deny Harris's PRP.

FACTS

*KM and JJ Live in Harris's Home*

In November 2013, KM and her daughter JJ lived at Harris's home. KM was Harris's niece. At the time, Harris was 47 years old, KM was 25 years old, and JJ was 5 years old.

Harris experienced periodic frustration with KM, believing that she was not a very considerate houseguest. Despite these frustrations, Harris was also physically affectionate toward KM. He put his arm around her, held her, and rubbed her back while they stood outside smoking. His home security video footage also revealed Harris running his hand down KM's lower back, rubbing her rear end, and letting his hand remain there.

*The Allegations*

On November 6, 2013, KM awoke to Harris touching her vagina. KM moved Harris's hand away. Harris told her that he wanted a relationship with her, but she refused and left the room.

During the rest of the day, Harris drove KM to a doctor's appointment in the morning and the two had lunch together. Harris then went to work, and when he returned home KM and JJ had moved out of his house.

On November 9, KM called the police to report the sexual assault. KM told the responding officer about Harris touching her. KM said that she did not report it earlier because Harris had threatened to kill her in the past. KM also said that Harris had abused JJ. JJ told the officer that Harris touched her in a "private spot" and that he put "a finger in there." Report of Proceedings (RP) (Feb. 17, 2015) at 280. JJ later described what Harris had done to her to an emergency room doctor, a forensic interviewer, a pediatric practitioner, KM, and KM's aunt.

The State charged Harris with one count of indecent liberties for touching KM. The State also charged Harris with one count of first degree rape of a child and one count of first degree child molestation for abusing JJ.

*Trial*

Before trial, the State filed a motion in limine to preclude evidence of KM's drug use. Defense counsel stated, "I understand the Evidence Rules and the issues involved there. I have talked with my client about how a number of things are not going to be admissible. We are not objecting." RP (Feb. 10, 2015) at 201-02.

At trial, defense counsel's strategy in opening statement and closing argument took a multi-faceted approach: (1) attack KM's credibility by suggesting that her story had changed over time because it was not the truth and instead a retaliation against Harris after her problematic behavior forced him to kick her out of his house, (2) attack KM's credibility by suggesting that spending time with Harris on November 6 was not consistent with him sexually assaulting her earlier in the day, (3) suggest that JJ's memories of being sexually abused by Harris were not actually real but the result of KM's coaching, (4) emphasize the lack of any physical evidence of abuse, (5) demonstrate that the layout of Harris's house and the lack of doors on Harris's and JJ's bedrooms were inconsistent with JJ's stories of abuse, and (6) present Harris himself as a credible witnesses who categorically denied any wrongdoing.

KM and JJ both testified at trial about Harris's conduct toward them as described above. The persons to whom JJ described the abuse also testified.

Harris testified at trial. He denied touching or molesting KM, or inappropriately touching or raping JJ. He also denied ever being alone with JJ. Harris testified that he worked long hours at his real estate office or at properties he managed.

On cross-examination, the prosecutor asked Harris about his relationship with KM and JJ and the physical affection he demonstrated toward KM. Harris initially denied touching KM's rear end, despite acknowledging that he was physically affectionate with her. Harris then viewed the security video footage outside the jury's presence, and later in the cross-examination he admitted that the video showed instances where he had rubbed KM's rear end.

When asked about his testimony that he was never alone with JJ, Harris clarified that he was never alone with her for more than a few minutes. Later in the cross-examination Harris again admitted that he would be alone with JJ for very short periods. He also admitted that he might be alone with JJ if KM was outside smoking or doing something else.

The jury found Harris guilty on all charges. Harris appealed his convictions, and this court affirmed. *State v. Harris*, No. 47477-8-II, (Wash. Ct. App. Feb. 7, 2017) (unpublished), http://www.courts.wa.gov/opinions/pdf/D2%2047477-8-II%20Unpublished%20Opinion.pdf. The Supreme Court denied his petition for review. *State v. Harris*, 188 Wn.2d 1013, 394 P.3d 1003 (2017).

*PRP Evidence*

Harris filed a timely PRP. Attached to the PRP were declarations from Harris as well as from several people who could have testified at trial but were not called as witnesses. Harris stated in his declaration that defense counsel failed to present certain types of witnesses and certain evidence that Harris brought to his attention.

First, Harris asserted that he told his defense counsel that they should call his employer and other witnesses to testify that he was trustworthy and truthful. In support of his PRP, Harris submitted a declaration from Towne Collins, his employer. Collins stated that Harris had a reputation as being honest, that the suggestion that he was dishonest was contrary to his

reputation at the office, and that he had a reputation of trustworthiness and truthfulness within the real estate community. Harris also submitted the declaration of Robert Hall, who used to live in the same mobile home park as Harris. Hall stated that Harris had an excellent reputation as an honest and truthful person. Finally, Harris submitted the declaration of Bob Powers, the property manager at the mobile park where Harris used to live, who stated that Harris had a reputation for honesty and truthfulness. Harris claimed that defense counsel told him that this evidence was inadmissible.

Second, Harris asserted that he wanted to call witnesses to testify that he could be trusted around kids. Hall stated in his declaration that he and his wife felt very comfortable with Harris around their young daughter, and that he thought other neighbors felt the same way about Harris because kids in the neighborhood often played with Harris's dog. Hall also stated that Harris had a reputation as someone who was safe around kids and had a reputation of sexual morality and decency around children. Powers stated in his declaration that Harris was considered in the community to be a safe person for kids to be around and that Powers would say that Harris had a reputation for sexual morality and decency. Harris claimed that defense counsel told him that they could not present this kind of evidence.

Third, Harris asserted that after JJ testified that Harris molested her during the day time and KM testified that Harris often was home during the day, he asked defense counsel to call his employer as a witness. Harris claimed that he told counsel that his employer would testify that Harris worked long hours Monday through Saturday. Collins's declaration stated that the allegation that Harris often was at home during the day was inaccurate; he saw Harris in the office almost every day of the week. However, Collins also remembered that while KM was staying with Harris, Harris frequently took time off to give her rides to doctor appointments.

Fourth, Harris asserted that he wanted defense counsel to present evidence that KM often was high on drugs. Harris stated in his declaration that "KM regularly used marijuana, pain pills and muscle relaxants, and possibly other drugs." PRP, App. (Harris Decl. at 2). She often was high at the house, seemed out of touch with what was going on, and usually was "still groggy in the morning from the drugs." PRP, App. (Harris Decl. at 2). Harris also submitted the declaration of Donald Satre, a neighbor, who stated that he saw KM often and her clothes usually smelled like marijuana. Satre said that KM smoked marijuana many times on the porch. Finally, Powers stated that almost every time he saw KM she seemed like she was high on drugs. Harris claimed that defense counsel told him that this evidence was not admissible.

Fifth, Harris asserted that he advised defense counsel that KM had been in trouble with the police and had been accused of stealing from Walmart. He claimed that he asked counsel to obtain the records from Walmart and investigate other police incidents involving KM. Harris claimed that defense counsel told him this evidence could not be introduced at trial.

Sixth, in support of his PRP Harris submitted evidence that KM had a pattern of making false accusations to law enforcement to retaliate against people who she perceived had injured her. KM's mother accused KM of calling the police with a false claim that her mother had physically assaulted her after KM's mother kicked her out of the house. A person to whom KM owed money claimed that KM called the police with a false harassment accusation against him after he had confronted her about the debt. KM's ex-boyfriend had petitioned for a protection order when they lived together, claiming she abused drugs, was mentally and emotionally unstable, and had frequently physically or verbally assaulted him.

Harris did not submit a declaration from his defense counsel to support his PRP arguments. Instead, Harris's declaration included only statements defense counsel allegedly made to him about the evidence.

ANALYSIS

A.     LEGAL BACKGROUND

1.     PRP Principles

We will grant appropriate relief when petitioners establish that they are under restraint that is unlawful for one of certain specified reasons. RAP 16.4(a)-(c). To prevail in a PRP, a petitioner must establish (1) a constitutional error that resulted in actual and substantial prejudice, or (2) a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice. *In re Pers. Restraint of Dove*, 196 Wn. App. 148, 154, 381 P.3d 1280 (2016). The petitioner must make this showing by a preponderance of the evidence. *Id.*

However, a PRP is not a substitute for a direct appeal, and the availability of collateral relief is limited. *Id.* at 153. " 'Relief by way of a collateral challenge to a conviction is extraordinary, and the petitioner must meet a high standard before this court will disturb an otherwise settled judgment.' " *Id.* (quoting *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132, 267 P.3d 324 (2011)).

RAP 16.7(a)(2) requires a petitioner to specifically identify the evidence available to support the factual allegations in the PRP. *In re Pers. Restraint of Wolf*, 196 Wn. App. 496, 503, 384 P.3d 591 (2016). The petitioner must show that he has competent, admissible evidence to establish facts that would entitle him to relief. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 18, 296 P.3d 872 (2013). Conclusory allegations are insufficient. *Wolf*, 196 Wn. App. at 503. In

addition, the factual allegations must be based on more than speculation and conjecture. *Yates*, 177 Wn.2d at 18.

We have three options when considering a PRP. First, if a petitioner does not show actual prejudice for constitutional errors or a fundamental defect resulting in a miscarriage of justice for nonconstitutional errors, the petition must be denied. *See id*. at 17. Second, if the petitioner has proved actual prejudice or a fundamental defect resulting in a miscarriage of justice, the petition should be granted. *Id.* at 18. Third, if the petitioner makes at least a prima facie showing but the merits of his or her contentions cannot be resolved solely on the record, we will remand for a full hearing on the merits or a reference hearing. *Id.*

2. Ineffective Assistance of Counsel

Ineffective assistance of counsel is a constitutional error, arising from the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). To prevail on an ineffective assistance claim, the defendant must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the defendant. *Id.* at 457-58. Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Id.* at 458. Prejudice exists if there is a reasonable probability that, except for counsel's errors, the result of the proceeding would have been different. *Id.*

We apply a strong presumption that defense counsel's performance was reasonable. *Id.* Counsel's conduct is not deficient if it was based on what can be characterized as legitimate trial strategy or tactics. *Id.* To rebut the strong presumption that counsel's performance was effective, "the defendant bears the burden of establishing the absence of any 'conceivable

legitimate tactic explaining counsel's performance.' " *State v. Grier*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011) (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

The "reasonable probability" standard for prejudice in an ineffective assistance of counsel claim is not precisely the same as the "actual and substantial prejudice" standard in a PRP. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 842, 280 P.3d 1102 (2012). However, the Supreme Court has held that a petitioner who presents a successful ineffective assistance of counsel claim necessarily establishes actual and substantial prejudice for purposes of collateral relief. *Id.* at 846-47.

When the basis of an ineffective assistance of counsel claim is the failure to introduce evidence, the defendant must show that the evidence would have been admissible. *See In re Pers. Restraint of Dalluge*, 152 Wn.2d 772, 777-78, 100 P.3d 279 (2004) ("If a petitioner raises ineffective assistance of . . . counsel on collateral review, he or she must first show that the legal issue that . . . counsel failed to raise had merit").

3.  Successive Ineffective Assistance of Counsel Claims

As a threshold matter, the State argues that we should dismiss Harris's ineffective assistance of counsel claims as successive because Harris raised an ineffective assistance counsel claim on direct appeal. We disagree.

A collateral attack cannot renew an issue raised and rejected on direct appeal unless the interests of justice require relitigation of that issue. *Yates*, 177 Wn.2d at 17. However, the claims of ineffective assistance rejected on Harris's direct appeal concerned defense counsel's failure to object to statements the prosecutor made during closing and rebuttal arguments and failure to enter Harris's security video footage as evidence. *Harris*, No. 47477-8-II, slip op. at 1, 9. Here, Harris is asserting ineffective assistance claims on different grounds. "We may

consider a new ground for an ineffective assistance of counsel claim for the first time on collateral review." *In re Pers. Restraint of Khan*, 184 Wn.2d 679, 689, 363 P.3d 577 (2015).

B.      FAILURE TO INTRODUCE EVIDENCE OF HARRIS'S CHARACTER

Harris argues his defense counsel was ineffective for failing to introduce evidence of his character for truthfulness under ER 608(a). He claims that defense counsel should have offered the testimony of Collins, Hall, and Powers, all who would have testified that Harris had a reputation for being honest and truthful. Harris also argues that his defense counsel was ineffective for failing to introduce the testimony of Hall and Powers under ER 404(a)(1) as evidence of his reputation for sexual morality and sexual decency around children.

There are questions regarding the admissibility of Harris's proposed testimony under ER 608(a) and ER 404(b). But even if the testimony was admissible, the record is insufficient for Harris to meet his burden of proving that defense counsel's performance was deficient in not calling these witnesses.

In general, the decision whether to call a particular witness at trial is subject to differences of opinion, and therefore we presume that such a decision is a matter of legitimate trial tactics. *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 545, 397 P.3d 90 (2017). The question is whether there are "possible strategic reasons" for not calling a witness. *In re Pers. Restraint of Morris*, 176 Wn.2d 157, 171, 288 P.3d 1140 (2012). And as noted above, there is a strong presumption that defense counsel's performance was reasonable. *Estes*, 188 Wn.2d at 458. A petitioner must rebut this presumption by proving that there was no conceivable legitimate tactic that would explain defense counsel's decision. *Grier*, 171 Wn.2d at 42.

There are many legitimate reasons why an attorney might decide not call a witness who appears favorable on paper. The testimony may appear fabricated on the stand, the witness may

have a poor demeanor, or the witness may have other information that would be harmful to the defense if brought out on cross-examination. And the testimony may not fit defense counsel's trial strategy. Specific to this case, the State points out that Collins was a good friend of Harris, and would have been impeachable as biased. And the State claims that the reputation witnesses would have been subject to attack on cross-examination because their opinions lacked sufficient foundation.

The Supreme Court in *State v. Linville* held that the record was insufficient to determine deficient performance on direct appeal when the record did not show "evidence on counsel's strategic or tactical decisions." 191 Wn.2d 513, 525, 423 P.3d 842 (2018). Although *Linville* involved a direct appeal rather than a PRP, that case is instructive here. Harris asserts that defense counsel told him that this testimony was inadmissible. But Harris presented no evidence of the reason defense counsel decided not to present this testimony.

In the absence of evidence regarding defense counsel's decision not to call reputation witnesses, Harris cannot overcome the strong presumption that counsel's decision involved legitimate trial tactics and cannot prove that counsel was deficient. Accordingly, we hold that Harris's ineffective assistance of counsel claim on this basis fails.

C.      FAILURE TO INTRODUCE EVIDENCE REGARDING HARRIS'S WORK HOURS

Harris argues his trial counsel was ineffective for failing to introduce testimony from Harris's employer Collins that Harris usually was at work during the day to rebut JJ's testimony that he molested her at home during the day. We disagree.

Even if trial counsel had called Collins to testify, this testimony would not have established that Harris was never at home and never in a position to commit the offenses as charged. On cross-examination, Harris admitted that he was sometimes alone with JJ in the

house during the time that she lived there. In addition, Collins's declaration acknowledges that "I do remember that during the time his niece was staying with him, that he did take time away to drive her to the doctor's office. This seemed to happen a lot." PRP, App. (Collins Decl. at 2).

Therefore, Harris fails to demonstrate that defense counsel's failure to call Collins as a witness was unsupported by any conceivable legitimate tactic, or that this testimony would have likely changed the result at trial. Accordingly, we hold that Harris's ineffective assistance of counsel claim on this basis fails.

D.      FAILURE TO INTRODUCE EVIDENCE OF KM'S DRUG USE

Harris argues defense counsel was ineffective for failing to oppose the State's motion in limine to exclude evidence of KM's drug abuse. He claims that defense counsel should have offered testimony from himself that KM frequently was high on drugs and usually was still groggy in the morning from drugs, testimony from Satre that KM frequently smoked marijuana, and testimony from Powers that KM seemed high on drugs every time he saw her. Harris also claims that defense counsel should have cross-examined KM about her drug use.[1] We disagree.

Evidence of a witness's drug use generally is inadmissible because it is impermissibly prejudicial. *State v. Tigano*, 63 Wn. App. 336, 344-45, 818 P.2d 1369 (1991). However, a witness's drug use is admissible to impeach the witness's credibility "if there is a showing that the witness was using or was influenced by the drugs at the time of the occurrence which is the subject of the testimony." *State v. Russell*, 125 Wn.2d 24, 83, 882 P.2d 747 (1994).

---

[1] Harris also refers to his appellate counsel's declaration attaching a police report regarding an allegation that KM has stolen medication from a former roommate, a police report that suggested KM was under the influence of drugs when she was interviewed about an incident, and a petition for a protective order in which KM's ex-boyfriend alleged that KM had a long history of marijuana and methadone use. However, this evidence referenced in the declaration is inadmissible hearsay, which cannot support a PRP. *See Yates*, 177 Wn.2d at 18.

ER 608(b) allows cross-examination of a witness regarding specific instances of the witness's conduct, but only "if probative of truthfulness or untruthfulness." *See State v. Cochran*, 102 Wn. App. 480, 486-87, 8 P.3d 313 (2000). Drug use is not probative of truthfulness because it has little to do with a witness's credibility. *Id.* at 487.

Under these principles, Satre's and Powers's proposed testimony would have been inadmissible. Neither the fact that KM frequently smoked marijuana on the front porch nor the fact that she always seemed high when she visited Harris at the mobile park is relevant to whether she was under the influence of drugs on the morning of November 6. Cross-examination of KM regarding her general drug use would be inadmissible for the same reason, and also would be inadmissible under ER 608(b) because drug use does not relate to her truthfulness.

Harris's statements that KM often was high on drugs and that she usually was groggy in the morning from the drugs could relate to whether KM was under the influence of drugs on the morning of November 6. But Harris provided no specifics. Harris did not state that KM smoked marijuana or took drugs on November 5. Harris left the house with KM around 10:00 AM on November 6 to drive KM to a doctor's appointment, but he did not state that she was groggy or otherwise under the influence of drugs at that time. In the absence of specific details about KM's drug use at the time of the alleged incident, Harris's proposed testimony would have been inadmissible.

We conclude that Harris cannot establish that the trial court would have admitted the testimony regarding KM's drug use. Therefore, he fails to demonstrate that defense counsel's failure to present this testimony was unsupported by any conceivable legitimate tactic or that this

testimony likely would have changed the result at trial. Accordingly, we hold that Harris's

ineffective assistance of counsel claim on this basis fails.

E.      FAILURE TO INTRODUCE EVIDENCE OF KM'S ACTS OF DISHONESTY

Harris argues that defense counsel was ineffective for failing to introduce evidence of

KM's criminal and dishonest behavior, which would have impeached her credibility as a witness.

He claims that defense counsel should have cross-examined KM about being accused of

shoplifting at Walmart and stealing her former roommate's medication, and should have called

KM's mother to testify about a false accusation KM made against her. Harris also claims that

defense counsel should have investigated further regarding the Walmart incident. We disagree.

ER 608(b) provides that specific instances of a witness's prior misconduct "may not be

proved by extrinsic evidence" other than a conviction of a crime under ER 609. But in the

discretion of the court, if the prior misconduct is "probative of truthfulness or untruthfulness" it

may "be inquired into on cross examination of the witness . . . concerning the witness' character

for truthfulness or untruthfulness." ER 608(b).

However, if a party is allowed to ask a witness about prior misconduct on cross-

examination, the party cannot challenge the witness's answer with extrinsic evidence. In other

words, if the witness denies the misconduct, the cross-examiner must accept that answer. "[I]f

the witness denies the specific misconduct or incident on cross-examination, the inquiry is at an

end. The cross-examiner must "take the answer" (though necessarily the first answer) of the

witness and may not call a second witness to contradict the first witness." 5A KARL B.

TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 608.11, at 447-48 (6th ed.

2016) (citing *Nevada v. Jackson*, 569 U.S. 505, 133 S. Ct. 1990, 186 L. Ed. 2d 62 (2013)).

Here, testimony from KM's mother, former roommates, or police officers about KM's previous dishonest acts would have been inadmissible under ER 608(b) because their testimony would have constituted extrinsic evidence. Similarly, evidence regarding the Walmart incident would have been inadmissible for the same reason. Therefore, defense counsel was not deficient in failing to offer that testimony and evidence.

Regarding cross-examining KM about her prior conduct, cross-examination is a matter of trial strategy that typically is immune from challenge as long as it falls within the range of reasonable representation. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 720, 101 P.3d 1 (2004). And as noted above, there is a strong presumption that defense counsel's performance was reasonable. *Estes*, 188 Wn.2d at 458. A petitioner must rebut this presumption by proving that there was no conceivable legitimate tactic that would explain defense counsel's decision. *Grier*, 171 Wn.2d at 42.

Here, there was a clear, legitimate reason for defense counsel to avoid cross-examining KM about her prior dishonest acts because under ER 608(b) – defense counsel could *only* ask her about them. If KM denied she had engaged in prior dishonest acts or if she mischaracterized them, ER 608(b)'s prohibition on extrinsic evidence to prove specific instances of conduct would have barred defense counsel from introducing police reports or calling KM's mother or her former roommates to rebut her testimony. And if KM denied the prior conduct or challenged defense counsel's allegations, defense counsel's credibility may have been compromised.

We conclude that Harris cannot establish that defense counsel was deficient in not cross-examining KM regarding her dishonest acts. Accordingly, we hold that Harris's ineffective assistance of counsel claim on this basis fails.

15

No. 51942-9-II

CONCLUSION

We deny Harris's PRP.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

MAXA, C.J.

We concur:

LEE, J.

CRUSER, J.

16